# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| **GHR HEALTHCARE, LLC,**<br><br>  Plaintiff,<br><br>v.<br><br>**LAURA NORRIE and ALINTA**<br><br>**STAFFING LLC,**<br><br>  Defendants. | **[CIVIL ACTION NO. ___]**<br><br>**JURY TRIAL DEMANDED** |

## <u>VERIFIED COMPLAINT — PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF REQUESTED — DECLARATORY RELIEF REQUESTED — DEMAND FOR A JURY TRIAL</u>

Plaintiff GHR Healthcare, LLC fka General Healthcare Resources, LLC (dba GHR RevCycle Workforce) ("GHR" or the "Company"), brings the following Verified Complaint against Defendants Laura Norrie ("Norrie") and Alinta Staffing LLC ("Alinta") (together, "Defendants"), and states as follows:

## <u>NATURE OF THE ACTION</u>

1. This action arises from Laura Norrie's misuse of GHR's confidential candidate information while employed by GHR and bound by restrictive covenants

1

designed to protect that information. During the final weeks of her employment, Norrie formed a competing staffing company. That company, Alinta Staffing LLC, now publicly advertises itself as a specialized healthcare staffing business providing nationwide recruitment and placement services in the same revenue-cycle, medical-coding, CDI, HIM, and related healthcare staffing markets in which Norrie worked for GHR. She was observed photographing information displayed on her GHR computer. During this same time, she used her unique user account to make hundreds of alterations to candidate records that rendered contact information inaccurate or unusable. GHR's ongoing investigation has also identified evidence that a USB device was attached to Norrie's GHR computer shortly before her departure. GHR does not yet know the full scope of all confidential information copied, transferred, retained, or used outside its systems. GHR therefore seeks immediate injunctive relief, expedited discovery, and targeted forensic inspection to preserve evidence and prevent further harm. GHR asserts claims for breach of contract, breach of fiduciary duty and the duty of loyalty, misappropriation of trade secrets, and related relief.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff GHR Healthcare, LLC, formerly known as General Healthcare Resources, LLC ("GHR"), is a Delaware limited liability company with its principal place of business at 1 Valley Square, Suite 200, Blue Bell, Pennsylvania 19422.

GHR provides healthcare staffing and recruitment services nationwide, including through its GHR RevCycle Workforce division. GHR's sole member is GHR Healthcare Group, LLC, a Texas limited liability company. The sole member of GHR Healthcare Group, LLC is GHR Healthcare Holdings, Inc., a Delaware corporation with its principal place of business at 1 Valley Square, Suite 200, Blue Bell, Pennsylvania 19422. Accordingly, GHR is a citizen of Delaware and Pennsylvania for purposes of 28 U.S.C. § 1332.

3.     Norrie is a citizen of Florida, a Florida resident, residing at 10028 Parley Drive, Tampa, Florida 33626, and a former Recruiter for GHR's RevCycle Workforce division.

4.     Defendant Alinta Staffing LLC ("Alinta") is a Florida limited liability company that publicly holds itself out as a nationwide healthcare staffing business providing recruitment and placement services in the same specialized healthcare staffing markets in which Norrie worked for GHR. Upon information and belief, Norrie is Alinta's sole member. Because Norrie is a citizen of Florida, Alinta is also a citizen of Florida for purposes of 28 U.S.C. § 1332.

5.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 because it arises under the laws of the United States, including the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq.

LEGAL\117040691\1

6.    This Court also has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because GHR is a citizen of Delaware and Pennsylvania, Norrie and Alinta are citizens of Florida, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.    This Court has personal jurisdiction over Norrie because she is domiciled in, and a citizen of, the State of Florida.

8.    This Court has personal jurisdiction over Alinta because, upon information and belief, it is organized under the laws of Florida and maintains its principal place of business in this State.

9.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants reside in this District and because a substantial part of the events or omissions giving rise to GHR's claims occurred in Hillsborough County, Florida, within this District.

## FACTS

### *Norrie's Employment and Access to GHR's Confidential Information*

10.    GHR is a healthcare and information-technology staffing company that recruits and places candidates with customers nationwide, including through its RevCycle Workforce division, which focuses on revenue-cycle staffing for the healthcare industry. GHR's RevCycle Workforce division recruits and places

4

professionals in revenue-cycle, medical-coding, HIM, CDI, and related healthcare staffing roles.

11.    On November 20, 2024, GHR hired Norrie as a Recruiter in its RevCycle division, working out of GHR's Tampa, Florida office.

12.    In this role, Norrie recruited and placed healthcare professionals for customers nationwide. Her duties included identifying and cultivating candidate relationships, sourcing and screening potential candidates, maintaining candidate information within GHR's recruiting systems, and working with GHR personnel to satisfy customer staffing needs.

13.    Through those responsibilities, Norrie obtained access to GHR's candidate database and other confidential business information, including candidate contact information, resumes, work histories, credentials, recruiter notes, candidate submissions, placement activity, active-headcount information, pipeline information, customer information, information concerning candidates being considered for placement, and other confidential business information maintained within GHR's recruiting systems.

14.    GHR expended substantial time, effort, and resources developing and maintaining its candidate database, candidate contacts, recruiting pipeline, active-headcount information, and placement opportunities. That information is not

publicly available and provides GHR with a competitive advantage in recruiting and placing healthcare professionals in the market.

15.    GHR's candidate database, candidate contacts, active-headcount information, pipeline information, and placement opportunities had substantial value to its business. At the time of Norrie's departure, GHR maintained multiple candidates within Norrie's active pipeline who appeared close to placement. Those opportunities were developed and maintained through GHR's recruiting systems, personnel, and resources.

### *Norrie's Restrictive Covenants with GHR*

16.    As a condition of her employment, Norrie executed a Confidentiality, Non-Competition, and Non-Solicitation Agreement with GHR, dated November 20, 2024 (the "Agreement"), a copy of which is annexed hereto as **Exhibit A**.

17.    In the Agreement, Norrie acknowledged that GHR's trade secrets, confidential information, and business records were proprietary to GHR and agreed that she would not use or disclose such information except as necessary to perform her job duties. Norrie further agreed that upon the termination of her employment she would return, and would not retain, copy, download, email, transfer, or otherwise preserve, GHR's confidential information, customer information, records, data, or other company property. *See* Ex. A at § 1.

6

18. Norrie also agreed that, for one year following the termination of her employment, she would not directly or indirectly engage in, assist, or work for a competing business engaged in the recruitment and placement of healthcare or information-technology staffing services within the United States. *See* Ex. A at § 2, 4(B).

19. Norrie further agreed that, during her employment and for one year thereafter, she would not directly or indirectly: (a) solicit, service, or accept business from GHR customers or prospective customers for competing services; (b) interfere with GHR's relationships with its customers, prospective customers, or vendors; (c) solicit or accept business of the type she solicited or accepted while employed by GHR; (d) solicit, hire, recruit, or contract with GHR personnel; or (e) induce any GHR employee, consultant, sales representative, or other agent to terminate or diminish his or her relationship with GHR. *See* Ex. A at § 3.

20. The Agreement defines "Competing Business" as "any entity that engages in the recruitment and placement of healthcare and information technology staffing services in the U.S." *See* Ex. A at § 4(B).

21. The Agreement further provides that, upon any breach of Sections 1 through 6, GHR "can pursue and will have available … the right to obtain an injunctive or other equitable relief from a court of competent jurisdiction restraining such breach or threatened breach," and that Norrie "consents to the issuance of such

7

injunction" without any bond or other surety, and that "the prevailing party will be entitled . . . to recover from the non-prevailing party all costs of such judicial action, including . . . reasonable attorneys' fees and costs." *See* Ex. A at § 6.

22.     The Agreement is governed by Florida law. *See* Ex. A at § 8.

23.     Norrie had an opportunity to review the Agreement, and the restrictive covenants contained therein, before signing.

### *Norrie's Preparations to Compete While Still Employed by GHR*

24.     On June 25, 2026, Norrie submitted her resignation by email to Barry Matthews, GHR's Senior Vice President of RevCycle.

25.     Around the same time, Norrie told GHR personnel that she intended to move to Sarasota, Florida, and take time away from work.

26.     Before she resigned, however, Norrie had already taken steps to establish a competing business. According to records maintained by the Florida Department of State, Division of Corporations, Norrie filed Articles of Organization for Alinta Staffing LLC on June 12, 2026 — thirteen days before her resignation from GHR became effective, and while she remained a GHR employee. The Articles specify an effective date of June 29, 2026, four days after her resignation. Document No. L26000325425.

27.    Publicly available records identify Norrie as Alinta's sole authorized member and registered agent. Those records list no other member, manager, or authorized person associated with Alinta.

### *Alinta's Website and Public Launch*

28.    Upon information and belief, on July 1, 2026, only two days after Alinta's effective formation date and less than one week after Norrie's resignation from GHR, Norrie registered the domain name alintastaffing.com for Alinta's website. The domain registration further confirms that Norrie was taking active steps to launch a staffing business immediately after leaving GHR.

29.    Upon information and belief, on or about July 27, 2026, Alinta's website became publicly accessible at alintastaffing.com. The website identifies Norrie as Alinta's Founder and CEO and states that she founded Alinta to deliver specialized healthcare staffing through a relationship-driven approach.

30.    The website holds Alinta out as a specialized healthcare staffing company that connects healthcare organizations, staffing partners, and vendors with experienced professionals in medical coding, Clinical Documentation Integrity, Health Information Management, auditing, Oncology Data Specialist work, trauma registry, and revenue-cycle services nationwide.

31.    The website further advertises that Alinta provides staffing support to healthcare organizations and vendor partners through contract, contract-to-hire, and

LEGAL\117040691\1

direct-hire placements nationwide, and invites employers to submit staffing requests for roles including medical coding, inpatient coding, outpatient coding, professional fee coding, Clinical Documentation Integrity, coding auditing and validation, Health Information Management, trauma registry, Oncology Data Specialists, revenue cycle, and billing specialists.

32.    The website also solicits candidates to submit resumes for current and future healthcare staffing opportunities, including contract, contract-to-hire, direct-hire, remote, hybrid, and onsite opportunities across medical coding, CDI, HIM, trauma registry, oncology data, and revenue cycle.

33.    These public-facing materials confirm that Alinta is not a passive entity. Alinta is being held out to customers, candidates, staffing partners, and vendors as an active healthcare staffing business operating nationwide in the same specialized revenue-cycle, medical-coding, CDI, HIM, and related healthcare staffing markets in which Norrie worked for GHR.

### *GHR's Response to Norrie's Conduct*

34.    Upon learning that Norrie had formed Alinta, GHR attempted to address the matter without litigation. On July 8, 2026, GHR's counsel sent Norrie a letter reminding her of her continuing obligations under the Agreement, noting the timing of Alinta's formation, and requesting that she confirm her understanding of those obligations. A copy of the July 8, 2026 letter is attached hereto as **Exhibit B**.

10

35.     On July 9, 2026, counsel for Norrie responded, representing that Norrie "did not copy, download, email, export, transfer, retain, use, or disclose any GHR confidential information, customer lists, candidate information, lead lists, pricing information, CRM/database information, contracts, reports, notes, or other company materials," and confirming that Norrie would preserve potentially relevant documents. A copy of the July 9, 2026 response is attached hereto as **Exhibit C**.

36.     Although Norrie, through her counsel, denied that she had copied, retained, used, or disclosed GHR information, the response left unanswered the central question prompting GHR's inquiry: what role Norrie and Alinta intended to play in the healthcare staffing industry following her resignation. The response likewise did not alleviate GHR's concerns regarding the protection and disposition of its confidential information.

### *Norrie's Misuse of GHR's Confidential Candidate Information*

37.     While GHR was attempting to fully determine the nature and scope of Norrie's post-resignation activities and the disposition of the Company's confidential information, GHR recruiters began encountering problems with candidate records Norrie had been responsible for maintaining. For example, one GHR recruiter attempted to contact candidates with whom Norrie had previously worked and discovered missing and inaccurate contact information. As GHR

11

investigated further, additional affected candidate records previously maintained by Norrie were identified.

38.    In some candidate profiles, telephone numbers had been removed entirely. In others, telephone numbers, email addresses, or other identifying information had been modified through subtle changes that rendered the affected records unreliable and impaired GHR's ability to identify and communicate with candidates. In many instances, the changes consisted of altering a single digit within a telephone number or a single character within an email address, making the record appear accurate at first glance while preventing GHR personnel from successfully contacting the candidate.

39.    As GHR expanded its review, audit-log information revealed that Norrie's unique user account had made approximately 500 alterations to candidate records in GHR's database during at least the final sixty days of her employment, affecting more than 150 of GHR's proprietary candidate profiles.

40.    GHR's review also uncovered additional irregularities attributable to Norrie. For example, in one instance, GHR identified a candidate record in which the candidate's first name appeared as "Aara" rather than "Sara," making the candidate more difficult to locate through LinkedIn and similar searches. In another, GHR's records showed that Norrie's user account deleted information associated with a candidate with whom she had previously worked shortly before her departure

12

and that a resume previously provided by the candidate had not been uploaded to the candidate's profile.

41.    Separately, as GHR's investigation into Norrie's conduct was underway, a GHR employee reported observing Norrie photograph information displayed on her computer screen using her personal cellphone during the final period of Norrie's employment.

### *GHR's Investigation and Continuing Competitive Threat*

42.    Following discovery of the altered candidate records and other irregularities described above, GHR undertook a broader review to determine the breadth of Norrie's misconduct, identify additional affected records, and assess whether GHR confidential information had been copied, transferred, retained, or used outside GHR's systems.

43.    During the course of that review, GHR uncovered additional information heightening its concerns regarding the potential misuse of its confidential information. Specifically, GHR identified evidence that a USB device had been attached to Norrie's computer in the days leading up to her departure. Although GHR has not yet determined what GHR information was copied to that device, the timing of that activity—together with the altered candidate records, other irregularities described above, and Norrie's competing business—raised concerns

13

that confidential information may have been copied, transferred, retained, or used outside GHR's systems.

44.    GHR's review also identified that Norrie sent approximately thirty LinkedIn InMail messages between April and June 2026, using a LinkedIn account connected to her GHR email address. Because LinkedIn accounts remain tied to the individual user rather than the employer, GHR has visibility into the volume of that activity but not its content or recipients, and cannot presently determine whether those messages concerned GHR candidates, customers, or business.

45.    GHR's concerns regarding the potential use of its confidential information by Norrie were further heightened when it learned that Norrie's husband, Andrew Norrie, had contacted a competing staffing agency, on or about June 25 or June 26, 2026, to inquire whether it would engage Norrie as a 1099 recruiter.

46.    Taken together, Alinta's formation, Norrie's registration of the alintastaffing.com domain, Alinta's public launch as a specialized healthcare staffing business operating nationwide in medical coding, CDI, HIM, trauma registry, oncology data, billing, and revenue-cycle staffing, the alteration of GHR's candidate records, the reported photographing of information displayed on Norrie's computer screen, the USB-device activity identified during GHR's review, Norrie's substantial LinkedIn outreach activity during the same period, and the inquiry by

14

Norrie's husband regarding recruiting work through another staffing agency caused GHR to reasonably believe that Norrie intends to continue engaging in recruiting or staffing activities outside GHR and may possess or have access to GHR confidential information in connection with those efforts.

47.    Despite Norrie's counsel's denial that Norrie copied, retained, used, or disclosed GHR information, GHR still does not know the full scope of Norrie's conduct, what information may have been preserved outside GHR's systems, whether any GHR candidate information has been provided to competing staffing agencies, or whether GHR information has been copied, transferred, retained, disclosed, or used by third parties. Absent court intervention, GHR cannot determine the disposition of its confidential information or prevent its potential use in further recruiting or staffing activities adverse to GHR's interests, creating a continuing risk of irreparable harm to GHR's candidate relationships, business opportunities, goodwill, and competitive position.

48.    All conditions precedent to bringing this action have occurred, been performed, or have been waived.

## COUNT ONE

## BREACH OF CONTRACT — NON-COMPETITION AND NON-SOLICITATION

15

**(Against Defendant Norrie)**

49. GHR incorporates the foregoing Paragraphs.

50. The Agreement is a valid and enforceable contract, supported by adequate consideration, including Norrie's employment and compensation, and GHR performed its obligations under it.

51. The Agreement prohibited Norrie, during her employment and for one year following termination of her employment, from competing with GHR in the United States, directly or indirectly, including as an employee, consultant, member, or other participant in any Competing Business engaged in the recruitment and placement of healthcare and information technology staffing services.

52. The Agreement also prohibited Norrie from soliciting, servicing, or accepting business from GHR customers or prospective customers for competing services; soliciting or accepting business of the type she solicited or accepted while employed by GHR; and interfering with GHR's customer, prospective-customer, vendor, employee, and business relationships.

53. The non-competition and non-solicitation covenants are reasonable in time, area, and line of business and are reasonably necessary to protect GHR's legitimate business interests in its confidential business information, candidate and customer information, substantial relationships with existing and prospective

16

customers and candidates, goodwill, and specialized training, within the meaning of Fla. Stat. § 542.335.

54.    Alinta is, upon information and belief, a Competing Business within the meaning of Section 4(B) of the Agreement. Alinta publicly advertises itself as a specialized healthcare staffing business providing nationwide recruitment and placement services to healthcare organizations, staffing partners, vendors, and candidates in medical coding, Clinical Documentation Integrity, Health Information Management, trauma registry, oncology data, billing, revenue cycle, and related healthcare staffing specialties. Norrie's formation, ownership, operation, or participation in Alinta during the one-year restricted period violates, or at minimum imminently threatens to violate, Section 2 of the Agreement.

55.    Norrie's alteration of candidate records, possession or potential possession of GHR confidential candidate information, and efforts to obtain recruiting work through another staffing agency, and her substantial LinkedIn outreach activity to as-yet-unidentified recipients during the same period, further support GHR's reasonable belief that Norrie has solicited, accepted, or intends to solicit or accept business of the type she solicited or accepted while employed by GHR, and has used or intends to use GHR's confidential information and business relationships in violation of Section 3 of the Agreement.

17

56.     As a direct and proximate result of Norrie's breaches and threatened breaches, GHR has suffered and continues to suffer damages and irreparable harm, including uncertainty regarding the scope of GHR information copied, transferred, retained, or used outside GHR's systems, impairment of the integrity and usability of GHR's candidate database, and the diversion of time and resources to investigate, restore, and correct affected records. Absent immediate relief, GHR cannot determine whether its confidential candidate information remains in Defendants' possession, has been shared with third parties, or continues to be used in competition with GHR. GHR has no adequate remedy at law.

## COUNT TWO

## BREACH OF CONTRACT — CONFIDENTIALITY AND RETURN OF PROPERTY

**(Against Defendant Norrie)**

57.     GHR incorporates the foregoing Paragraphs.

58.     Norrie breached Section 1 of the Agreement by intentionally altering GHR's confidential candidate records — conduct GHR's system activity history attributes to Norrie's own user account — for purposes unrelated and adverse to GHR's business.

18

59.   Section 1 of the Agreement prohibited Norrie from using or disclosing GHR's Trade Secrets except as required to perform her duties for GHR. Section 1 also required Norrie, upon leaving GHR's employment for any reason, to promptly deliver to GHR, and not keep in her possession, recreate, copy, email, download, or deliver to anyone else, any GHR devices, records, data, notes, reports, proposals, financial information, customer information, correspondence, plans, materials, equipment, documents, property, or reproductions of such materials.

60.   Based on the conduct described above, including Norrie's photographing of information displayed on her GHR computer, her alteration of candidate contact records, and GHR's discovery of evidence that a USB device was attached to Norrie's GHR computer in the days leading up to her departure, GHR alleges upon information and belief that Norrie copied, retained, or otherwise preserved GHR confidential information outside GHR's systems and has failed to return or permanently delete it. GHR's investigation into whether information was copied, transferred, or retained through the USB device remains ongoing, and the presently available information gives GHR a reasonable basis to seek immediate preservation relief, expedited discovery, and targeted forensic inspection.

61.   As a direct and proximate result, GHR has suffered damages and irreparable harm, including the compromised integrity and usability of its candidate database, uncertainty regarding the scope of GHR information copied, transferred,

19

retained, or used outside GHR's systems, and the time and expense incurred to investigate, restore, and correct affected records. GHR has no adequate remedy at law.

## COUNT THREE

## BREACH OF FIDUCIARY DUTY AND THE DUTY OF LOYALTY

### (Against Defendant Norrie)

62.    GHR incorporates the foregoing Paragraphs.

63.    As a GHR employee entrusted with access to GHR's confidential candidate information, customer information, recruiting systems, and business relationships, Norrie owed GHR a duty of loyalty under Florida common law, including a duty not to act, while still employed, in a manner adverse to GHR's interests or to use GHR's confidential information, systems, or business opportunities for purposes unrelated and adverse to GHR's business.

64.    Norrie breached her duty of loyalty by altering GHR's candidate records while still employed by GHR, conduct GHR's audit data attributes to Norrie's own user account, including through single-character changes, deleted information, cleared fields, and other irregularities that rendered candidate records unreliable and impaired GHR's ability to use its own candidate data.

20

65.    Norrie further breached her duty of loyalty by photographing information displayed on her GHR computer screen using her personal cellphone while still employed by GHR and, upon information and belief, by attaching or using a USB device in connection with her GHR computer in the days leading up to her departure for purposes unrelated and adverse to GHR's business.

66.    Norrie's formation of Alinta while still employed provides further context for, and evidence of motive underlying, her alteration of GHR's candidate records and related misconduct while she remained employed by GHR.

67.    As a direct and proximate result, GHR has suffered damages, including the cost of investigating and remediating Norrie's conduct, auditing affected records, restoring missing or altered candidate information, correcting inaccurate data, addressing the loss of usable candidate data, and uncertainty regarding the scope and disposition of GHR confidential information outside GHR's systems. GHR has no adequate remedy at law.

## COUNT FOUR

## MISAPPROPRIATION OF TRADE SECRETS

## (FLORIDA UNIFORM TRADE SECRETS ACT, FLA. STAT. § 688.001, ET SEQ.)

## (Against Defendants Norrie and Alinta)

21

68. GHR incorporates the foregoing Paragraphs.

69. The Florida Uniform Trade Secrets Act ("FUTSA") prohibits the misappropriation of trade secrets, including the acquisition, disclosure, or use of trade secrets by a person who knows or has reason to know that the trade secrets were acquired by improper means or under circumstances giving rise to a duty to maintain their secrecy or limit their use. Fla. Stat. §§ 688.002, 688.003.

70. GHR's candidate database is a compiled body of information, including candidate names, direct contact information, resumes, work histories, credentials, recruiter notes, submission history, active headcount, pipeline status, and placement outcomes, that GHR develops and updates continuously through its recruiting, screening, and placement efforts. That compilation is not merely a collection of publicly available names and contact information. Rather, it reflects GHR's accumulated, non-public knowledge regarding candidate qualifications, availability, placement readiness, recruiting history, recruiter relationships, and placement opportunities developed through substantial time, effort, and expense. Competitors could not readily recreate this information without investing significant resources developing comparable candidate relationships, recruiting histories, and placement intelligence.

71. GHR maintains this compilation behind password-protected, role-based access limited to employees with a business need, requires those employees,

22

including Norrie, to execute confidentiality agreements as a condition of access, and logs and audits account-level activity within the database, as reflected in the audit trail that identified Norrie's alterations. These measures constitute reasonable efforts to maintain the compilation's secrecy.

72.    Norrie had access to this trade-secret compilation solely by virtue of her employment and subject to the confidentiality obligations set forth in the Agreement. Based on the conduct described above, including the photographing of information displayed on her GHR computer screen, the alteration of candidate records, and the USB-device activity identified during GHR's investigation, GHR alleges upon information and belief that Norrie acquired, copied, retained, or otherwise preserved portions of GHR's confidential candidate information outside GHR's systems by improper means and in breach of her duties to maintain the secrecy of that information and limit its use to GHR business purposes.

73.    Upon information and belief, Alinta has received, used, retained, or stands to benefit from GHR's trade-secret information through Norrie, its sole authorized member and registered agent, and knew or had reason to know that any such information was acquired through Norrie's employment with GHR and in breach of her confidentiality obligations to GHR.

74.    Alinta's public website, which solicits healthcare employers and candidates in the same specialized staffing markets in which Norrie worked for

23

GHR, further demonstrates the immediate risk that any GHR candidate, pipeline, placement, customer, or other trade-secret information retained by Norrie could be used to accelerate Alinta's competing staffing business.

75.    As a direct and proximate result of Defendants' misappropriation and threatened misappropriation, GHR has suffered and will continue to suffer irreparable harm unless Defendants are enjoined from using, disclosing, retaining, transferring, or otherwise exploiting GHR's trade-secret information.

## COUNT FIVE

### MISAPPROPRIATION OF TRADE SECRETS

### (DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)

### (Against Defendants Norrie and Alinta)

76.    GHR incorporates the foregoing Paragraphs.

77.    The federal Defend Trade Secrets Act ("DTSA") prohibits the misappropriation of trade secrets related to a product or service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. §§ 1836(b)(1), 1839. GHR's staffing and recruitment services, and the candidate and customer information at issue, are used in interstate commerce because GHR recruits, places, and supports candidates and customers across state lines.

LEGAL\117040691\1

78.    GHR's candidate database and related candidate information, including candidate names, direct contact information, resumes, work histories, credentials, recruiter notes, submission history, active headcount, pipeline status, placement outcomes, candidate availability, candidate relationships, recruiting history, and placement opportunities, constitute trade secrets under the DTSA because they derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, competitors who could obtain economic value from their disclosure or use.

79.    GHR takes reasonable measures to maintain the secrecy of this information, including maintaining it within restricted recruiting systems, limiting access to employees with a business need, requiring confidentiality agreements as a condition of access, and logging and auditing account-level activity within its systems.

80.    Norrie had access to GHR's trade-secret information solely by virtue of her employment and subject to her contractual and common-law duties to maintain its secrecy and limit its use to GHR business purposes.

81.    Based on the conduct described above, including Norrie's photographing of information displayed on her GHR computer screen, alteration of candidate records, and the USB-device activity identified during GHR's investigation, GHR alleges upon information and belief that Norrie acquired, copied,

25

retained, or otherwise preserved GHR trade-secret information outside GHR's systems by improper means and under circumstances giving rise to duties to maintain its secrecy and limit its use.

82.    Upon information and belief, Alinta has received, used, retained, or stands to benefit from GHR's trade-secret information through Norrie, its sole authorized member and registered agent, and knew or had reason to know that such information was acquired through Norrie's employment with GHR and in breach of her duties to GHR.

83.    Alinta's public solicitation of employers and candidates in the same specialized healthcare staffing markets in which Norrie worked for GHR further demonstrates the immediate risk that any GHR trade-secret information retained by Norrie could be used to accelerate Alinta's competing staffing business.

84.    Defendants' conduct constitutes actual or threatened misappropriation of trade secrets under the DTSA.

85.    As a direct and proximate result of Defendants' misappropriation and threatened misappropriation, GHR has suffered and will continue to suffer irreparable harm unless Defendants are enjoined from using, disclosing, retaining, transferring, or otherwise exploiting GHR's trade-secret information.

26

# PRAYER FOR RELIEF

WHEREFORE, GHR respectfully requests that this Court enter judgment in its favor and against Defendants and grant the following relief:

A.      Temporary, preliminary, and permanent injunctive relief against Norrie, enjoining her from violating the non-competition and non-solicitation covenants contained in the Agreement through June 25, 2027, including but not limited to operating, working for, assisting, or otherwise participating in Alinta or any other Competing Business as defined by the Agreement;

B.      Temporary, preliminary, and permanent injunctive relief against Alinta from engaging in the recruitment and placement of healthcare or information-technology staffing services in competition with GHR;

C.      Temporary, preliminary, and permanent injunctive relief prohibiting Defendants from using, disclosing, transferring, retaining, deleting, destroying, altering, or otherwise exploiting GHR's confidential information or trade secrets;

D.      Temporary, preliminary, and permanent injunctive relief prohibiting Defendants from engaging in recruiting, referral, placement, staffing, or related activities derived from, involving, or benefitting from GHR's confidential information or trade secrets;

27

E.     An order requiring Defendants to provide an accounting of, and to disgorge and return to GHR, all GHR trade secrets, confidential information, documents, data, and property in their possession, custody, or control;

F.     An order requiring preservation of all potentially relevant devices, accounts, storage media, communications, and data, including any USB or external storage devices connected to Norrie's GHR computer in the days leading up to her departure, and authorizing a targeted forensic inspection of Norrie's relevant personal devices, accounts, external storage media, and Alinta's systems, under a protocol to be agreed by the parties or approved by the Court, limited to devices, accounts, storage media, date ranges, and search terms reasonably calculated to determine whether GHR confidential information was copied, transferred, retained, used, disclosed, deleted, destroyed, or altered outside GHR's systems;

G.     An order requiring Defendants to preserve and refrain from deleting, altering, concealing, transferring, accessing, or destroying any data, communications, accounts, devices, storage media, or documents potentially containing GHR confidential information pending further order of the Court;

H.     An order permitting expedited discovery regarding Norrie's and Alinta's post-resignation activities, including communications with GHR candidates, customers, and prospective customers, any staffing placements or referrals, communications with other staffing agencies, and the disposition of any

28

GHR information copied, transferred, retained, used, disclosed, deleted, destroyed, or altered outside GHR's systems;

I.      A declaration that Defendants' conduct constitutes misappropriation of trade secrets under the DTSA and FUTSA;

J.      Damages against Defendants in an amount to be determined at trial, together with pre- and post-judgment interest at the maximum legal rate;

K.      Exemplary and/or punitive damages as provided by applicable law;

L.      An award of GHR's reasonable attorneys' fees, costs, and expenses; and

M.      Such other and further relief as the Court deems just and proper.

LEGAL\117040691\1

Respectfully submitted,

**COZEN O'CONNOR**

Dated: <u>July 28, 2026</u>

<u>/s/ Arielle S. Eisenberg</u>
Arielle S. Eisenberg (FL No. 111467)
*Lead Counsel*
aeisenberg@cozen.com
200 South Biscayne Boulevard, Suite 3000
Miami, FL 33131
786-871-3953

Marla N. Presley (PA No. 91020)
(*pro hac vice* forthcoming)
mpresley@cozen.com
One Oxford Centre
301 Grant Street, 41st Floor
Pittsburgh, PA 15219-1407
412-620-6500

Daniel L. Blanchard (PA No. 311479)
(*pro hac vice* forthcoming)
dblanchard@cozen.com
Daniel F. Thornton (PA No. 318431)
(*pro hac vice* forthcoming)
dthornton@cozen.com
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103-7325
215-665-2000

*Counsel for Plaintiff, GHR Healthcare, LLC*

30

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States that the factual allegations set forth in Paragraphs 1–48 of the foregoing Verified Complaint are true and correct based on my personal knowledge and on information made available to me in my capacity as Senior Vice President – RevCycle. Executed on July 28, 2026.

_Barry Matthews_

Barry Matthews, Senior Vice President – RevCycle

GHR Healthcare, LLC fka General Healthcare Resources, LLC (dba GHR RevCycle Workforce)

31

# CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2026, a true and correct copy of the foregoing

Verified Complaint, together with all exhibits thereto, was e-mailed to Defendants

Laura L. Norrie and Alinta Staffing LLC by email, addressed as follows:

Laura L. Norrie
Alinta Staffing LLC
10028 Parley Drive
Tampa, FL 33626
lnorrie@alintastaffing.com

I further certify that on July 28, 2026, a true and correct copy of the foregoing

Verified Complaint, together with all exhibits thereto, was e-mailed to counsel for

Laura L. Norrie and Alinta Staffing LLC, addressed as follows:

Matthew R.J. Knych, Esq.
Freedom Shield Legal
1600 E. 8th Avenue
Tampa, FL 33605
813-459-3610
matt@freedomshieldlegal.com

Dated: July 28, 2026

/s/ Arielle S. Eisenberg
Arielle S. Eisenberg

LEGAL\117040691\1